**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**NATALIA THOMAS,**

    Plaintiff,                                  Case No.

-vs-                                      HON.

**LANSING SCHOOL DISTRICT,**

    Defendant.

_____

**MORGAN & JONES, PLLC.**
Sam Morgan (P36694)
Barbara Urlaub (P38290)
Attorneys for Plaintiff
30500 Northwestern Hwy Suite 425
Farmington Hills, MI 48334
(248) 865-0001
smorgan@work-lawyers.com
burlaub@work-lawyers.com

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, NATALIA THOMAS, by and through her attorneys, MORGAN & JONES, PLLC., states her Complaint against Defendant, LANSING SCHOOL DISTRICT, as follows:

## NATURE OF CASE

1.    In this cause of action, Plaintiff asserts claims of employment discrimination and retaliation against the Defendant, her former employer, on the basis of (1) discriminatory treatment and harassment based on her

religion and/or religious beliefs, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., (hereinafter "Title VII"), and the Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2101, et. seq. (hereinafter the "ELCRA"); and (2) retaliation and retaliatory harassment based on her pre-Charge internal complaints about religious-based discrimination and harassment, and based on the Charge of Discrimination that she filed with the Equal Employment Opportunity Commission (the "EEOC") on or about August 22, 2025, in violation of Title VII and the ELCRA

## **PARTIES**

2.      Plaintiff, NATALIA THOMAS, is an individual residing in the City Lansing, in Eaton County, Michigan.

3.      Defendant, LANSING SCHOOL DISTRICT ("Defendant" or "LSD"), is a body corporate classified as a general powers school district, pursuant to MCL § 380.11a, with the capacity to be sued for the wrongful acts of the LSD, and at all relevant times has a principal office, resident agent and address in the City of Lansing, in Ingham County, Michigan.

## **JURISDICTION AND VENUE**

4.      This Court has jurisdiction over Plaintiff's Title VII and ADEA claims under and pursuant to 42 USC § 2000e-5, 29 USC § 626, and 28

2

USC §§ 1331 (federal question jurisdiction) and 1343 (jurisdiction over civil rights claims).

5.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 USC § 1367.

6.     Venue is proper in this judicial circuit pursuant to 28 U.S.C. §1391, as Defendant conducts regular, continuous, and systematic business activities within, and has a real presence in, Ingham County, Michigan, and the acts of unlawful discrimination under which this cause of action arises occurred in Ingham County, Michigan.

7.     This cause of action stems from religious-based discrimination and harassment by Plaintiff LSD-employed supervisor, LSD's inadequate response to Plaintiff's internal and external (i.e., to the EEOC) reports about that religious based discrimination and harassment; the retaliatory response to Plaintiff's August 22, 2025 EEOC Charge of Discrimination, including but not limited to the witch-hunt behavior of LSD's investigator, who focused on characterizing Plaintiff as a bad-actor with ulterior motives as he attempted to manipulate witnesses who had previously corroborated Plaintiff's complaints, and manufacturing negative information about Plaintiff for the purpose of later initiating an investigation of Plaintiff to manufacture a basis for the LSD to pursue corrective and/or disciplinary action against Plaintiff,

and ultimately the LSD's decision to include Plaintiff in a reduction in force on June 4, 2026, for the purpose of terminating her employment, effective on June 30, 2026.

8.    Plaintiff timely filed a charge of religious discrimination and retaliation with the EEOC August 22, 2026. (Exhibit A)

9.    Plaintiff has timely filed this action within 90 days of receiving a Notice of the Right to Sue from the EEOC, which was issued on February 19, 2026. (Exhibit B).

**<u>GENERAL ALLEGATIONS</u>**

10.    Plaintiff is an individual who has been raised in the Christian faith and, as an adult, is and has been committed to her sincerely held religious beliefs as a Christian.

11.    Plaintiff commenced employment with LSD on or about December 9, 2026, as a Print Shop Specialist.

12.    On or about her first day of work with LSD, Plaintiff revealed to her immediate supervisor and some of her co-workers that she was a Christian.

13.    Plaintiff also had bumper stickers on her vehicle that say that she is a Christian.

14.   Within the 180 days her employment with the LSD, Plaintiff was subjected to disrespectful, condescending, and abusive treatment, including the use of vulgar language and religious-based profanity, bullying, intimidation, and coercion from her immediate supervisor in the Print Shop.

15.   The above-referenced treatment occurred on a regular basis and got progressively worse.

16.   For example, Plaintiff's immediate supervisor frequently used the F-bomb when talking to her, or many times while yelling at her, criticizing and belittling her, on a daily occurring basis, in addition to cursing, and frequently using the phrases "Jesus F**ing Christ," "God Damn," and "Goddammit."

17.   Plaintiff's immediate supervisor's use of vulgar language and religious-based profanity was offensive to Plaintiff, personally, as it offended her sensibilities as a Christian, and her Christian-based beliefs about how people should be treated.

18.   From her initial onboarding at the commencement of her employment with LSD, Plaintiff read and became familiar with the LSD employee handbook, including the policies contained in the Diversity section regarding Anti-Harassment.

19.   The LSD employee handbook Anti-Harassment policy states that the LSD's Board of Education will vigorously enforce its prohibition against harassment based on religion, in addition to other classifications protected by federal civil rights laws.

20.   The LSD employee handbook defines Harassment as including threatening, insulting, or dehumanizing gestures, use of technology, or written, verbal or physical conduct directed against an employee, among other things, has the effect of substantially interfering with an employee's work performance.

21.   The LSD employee handbook also defines prohibited Religious (Creed) Harassment as including unwelcome verbal conduct that is based upon an individual's religion or creed and when the verbal conduct has the purpose or effect of interfering with the individual's work, or creating an intimidating, hostile, or offensive working environment, or is directed at the characteristics of a person's religious tradition or involves religious slurs.

22.   Also, as Plaintiff later learned, the LSD's Board of Education's board policy # 3362.02 clearly states that the LSD "will not tolerate inappropriate or intimidating behavior within the workplace[,]" and includes "yelling, using profanity or vulgarity, verbally abusing others," within its definition of "inappropriate behavior" by staff members.

6

23.    The LSD Board's board policy # 3362.02 expressly states that "[s]taff who violate this policy may be subject to discipline up to and including discharge."

24.    The LSD employee handbook Anti-Harassment policy expressly states that the LSD Board "will investigate all allegations of harassment[,]" and that "[i]ndividuals who are found to have engaged in unlawful harassment will be subject to appropriate disciplinary action."

25.    During a one-on-one meeting with her immediate supervisor after her first 90-days of employment, Plaintiff addressed how her supervisor's constant use of profanity, curse words, and derogation of Jesus Christ's and God's names was offensive and made her feel uncomfortable in her work environment.

26.    Plaintiff asked her immediate supervisor to stop using profanity, curse words, and derogatory phrases using Jesus Christ's and God's names.

27.    Plaintiff's immediate supervisor was unaffected by Plaintiff's complaint.

28.    If anything, Plaintiff's supervisor seemed to view her sensitivity as a weakness, or vulnerability, that she could exploit.

29.    Plaintiff's immediate supervisor continued using the phrases "Jesus F**ing Christ," "God Damn," and "Goddammit" in her conversations during the workday.

30.    Plaintiff's immediate supervisor, also, continued to use F-bombs in most of her conversations with other LSD employees.

31.    Plaintiff's immediate supervisor told one of Plaintiff's co-workers that she thought "church people" and Christians were stupid or idiots because of their beliefs on things like homosexuality.

32.    The LSD rents the Lansing Tech Center auditorium (contained in the same building where Plaintiff and her immediate supervisor worked) to a Christian church for Sunday worship services, and in the Spring of 2025, members of that church planted flowers on the grounds outside the building entrance and painted the some of the curbs that separate the driveway from the sidewalk yellow.

33.    In a conversation with Plaintiff's co-workers, when the subject of the flowers and yellow painted curbs came up, Plaintiff's immediate supervisor made derogatory statements about those "church people," stating that she "hates" them.

34.    On or about May 1, 2025, Plaintiff contacted an LSD Human Resources Department staffer and scheduled a meeting with HR to file a complaint.

35.    The HR staffer connected Plaintiff with one of LSD's Human Resources Compliance Officers, who in turn met with Plaintiff on May 2, 2025.

36.    During her meeting with the LSD Human Resources Compliance Officer, Plaintiff made a complaint about her immediate supervisor's abusive treatment, bullying, and use of profanity and other offensive curse words and phrases that were derogatory and disrespectful to her religious beliefs, which had created a hostile work environment.

37.    The LSD Human Resources Compliance Officer attempted to downplay the conduct that Plaintiff was complaining about, characterizing it as an "interpersonal conflict," but Plaintiff told him that her complaint was about her supervisor's misconduct and verbal harassment that is specifically prohibited by LSD policies and work rules, which was offensive to her religious beliefs and sensibilities.

38.    The LSD Human Resources Compliance Officer was dismissive and told Plaintiff that she was overreacting and overly sensitive.

9

39.    The LSD Human Resources Compliance Officer told Plaintiff that the HR Department likely would not conduct an investigation into the complaints that she was raising - a response that directly conflicted with LSD's Anti-Harassment policy.

40.    The LSD Human Resources Compliance Officer did not escalate Plaintiff's company to upper management in the LSD HR Department, nor did he initiate or conduct an investigation into Plaintiff's complaints, and no corrective or remedial action was taken by the LSD to stop Plaintiff's supervisor's offensive conduct.

41.    Despite the LSD Human Resources Compliance Officer's assurances that she would not be subjected to retaliation due to the complaint she made, on or about May 21, 2025, Plaintiff was denied a step increase in her rate of compensation, in spite of job performance that warranted approval of the increase.

42.    Plaintiff next submitted complaints about her immediate supervisor's offensive conduct and apparent retaliation to the LSD Human Resources Department on June 30, and July 25, 2025, and the LSD Human Resources Director finally met with her on July 29, 2025.

43.    During that July 29, 2025, meeting, the LSD Human Resource Director told Plaintiff that the LSD Superintendent "swears all the time" when

in meetings with department heads like himself, and that everyone in those meetings is probably comfortable with that.

44.    Plaintiff emphasized that her complaint was about more than just swearing, but also was about the constant abusive conduct, and the fact that her immediate supervisor made the comment in the workplace that she hated "church people," fully knowing that Plaintiff was openly Christian.

45.    The Human Resources Director told Plaintiff that he do an investigation, but when three (3) weeks passed without any visible investigation being conducted, Plaintiff assumed that he was ignoring her complaint the same as the Human Resources Compliance Officer ignored her complaint, so she filed her EEOC Charge of Discrimination.

46.    Plaintiff also told three of her co-workers (whom she identified as witnesses to the LSD Human Resources Director) that she had filed an EEOC Charge of Discrimination, and they each told Plaintiff that they would corroborate her complaint.

47.    Three days after she filed her EEOC Charge of Discrimination, the LSD Director of Human Resources suddenly appeared in the Print Shop to conduct interviews regarding the complaint Plaintiff prior to and during their meeting of July 29, 2025.

48.   After interviewing at least three of Plaintiff's co-workers, the Director of Human Resources met with Plaintiff and, among other things, told her that her co-workers each corroborated the substance of her complaints.

49.   Plaintiff's immediate supervisor was placed on administrative leave, and it appeared that the LSD was finally going to take remedial action

50.   Plaintiff knew that her co-workers would corroborate her complaint because they had been talking to each other about their respective observations, and what they had heard their supervisor say for the previous 9 months.

51.   Plaintiff's co-workers also found their supervisor's conduct offensive, but they were not so much the subject of the supervisor's abusive treatment, as was Plaintiff.

52.   Plaintiff and her co-workers also talked among themselves about how the LSD HR department was not taking Plaintiff's complaints seriously.

53.   Plaintiff and her co-workers also talked among themselves when, on August 27, 2025, the LSD Human Resources Director informed Plaintiff that another investigator, a man from the LSD Public Safety Department, was going to start another investigation into her complaint.

12

54.   The LSD Human Resource Director did not explain why his investigation of Plaintiff's complaint was not enough to make a determination regarding corrective or disciplinary action against Plaintiff's supervisor, or why the LSD believed it was necessary to have a different person conduct another investigation.

55.   Plaintiff and her co-workers discussed the fact that none of them really trusted the District and their decision to bring the Public Safety investigator in to do another investigation, and two of those co-workers told Plaintiff that other former Print Shop employees had been fired after complaining about their immediate supervisor, and that no one had ever had success with a complaint about her before.

56.   In fact, there was a consensus among Plaintiff and her co-workers that the second investigator's role was likely to mitigate the legal liability for the LSD, because of the finding made by the Director of Human Resources.

57.   Plaintiff's co-workers were also adversely affected by their supervisor's conduct and each expressed that they had an interest in seeing whether the LSD was going to apply the Discrimination and Anti-Harassment policy as it was written.

58.    The LSD Public Safety Department's investigator interviewed Plaintiff and three of her co-workers on September 5, 2025.

59.    Plaintiff and her co-workers, again, spoke among themselves after the interviews, comparing their respective experiences, and two of Plaintiff's co-workers stated that the investigator tried to put words in their mouths to the effect that Plaintiff supposedly told them that she would sue the LSD for $5 million if she were fired in retaliation for filing a complaint about their supervisor's conduct.

60.    Plaintiff's co-workers stated that they were familiar with the EEOC investigative process, and the fact that the LSD would be filing a position statement in response to Plaintiff's Charge of Discrimination.

61.    Plaintiff's co-workers told Plaintiff that they knew that Plaintiff would be able to secure a copy of the LSD's position statement, and the investigator's report if it ended up being attached to the position statement.

62.    On or about September 25, 2025, LSD completed its investigation into Plaintiff's complaints about her immediate supervisor and concluded there was "sufficient evidence to substantiate some, but not all, of [Plaintiff's] allegations."

63.    LSD concluded that Plaintiff's supervisor violated its Board Policy #4362.02, which identifies yelling, the use of profanity, and vulgarity as violations of workplace safety expectations.

64.    The LSD's determined that Plaintiff's immediate supervisor, in fact, frequently used profanity and yelled at her, including offensive outbursts such as "Jesus F**king Christ" and "Goddammit."

65.    Despite these findings, however, the LSD determined that Plaintiff's allegation of harassment or retaliation based on religious affiliation was not substantiated.

66.    As a result of the investigation, the LSD took disciplinary action against Plaintiff's immediate supervisor, in the form of (1) removing her from the Print Shop Supervisor position, (2) reassigning her to a role in another department that was housed in a different room and work area of the same building that housed the Print Shop, (3) that did not supervisor personnel, and (4) would not have direct contact with Plaintiff.

67.    Also, on September 25, 2025, as a result of a power outage in the building that houses the Print Shop, the Director of Communications and Public Relations (Plaintiff's bosses boss) directed Plaintiff and one of her co-workers (a witness who was interviewed in response to her EEOC Charge) to report to the Administration Building to work the following day.

68.    Plaintiff, then, learned that her former supervisor was also directed to report to work at the Administration Building.

69.    When Plaintiff learned that the LSD's corrective action plan did not include the termination of her immediate supervisor's employment, and that she was being reassigned to a position located in the same building that she works in, Plaintiff experienced an episode of severe and nearly debilitating anxiety for which she sought medical treatment.

70.    Plaintiff's treating physician recommended that Plaintiff stay off from work for five (5) days, as she attempted to convince LSD to re-think its reassignment decision.

71.    On September 26, 2025, Plaintiff complained to the LSD Human Resources Director about the reassignment of her former immediate supervisor, and her belief that the reassignment posed a threat that the former supervisor would have opportunities on a daily basis to retaliate against her, and to retaliate against, manipulate, and coerce the co-workers that corroborated her complaints.

72.    Plaintiff also notified the LSD Human Resources of her mental health condition and requested reassignment to work in a building other than the building in which her former supervisor would be assigned to work.

73.    LSD's Human Resources Director responded to Plaintiff's complaint and stated that her former supervisor would not be working in her proximity.

74.    On September 30, 2025, Plaintiff notified LSD's Human Resources Director that her mental health condition was a disability under state and federal law, and formally requested reassignment to work in a building other than the building in which her former supervisor would be assigned to work as a reasonable accommodation for that disability.

75.    LSD refused to approve Plaintiff's reasonable accommodation request.

76.    In the meantime, one of Plaintiff's co-workers/witnesses who was interviewed by the Public Safety Department investigator, repeatedly asked Plaintiff whether LSD had filed its position statement with the EEOC.

77.    On November 20, 2025, Plaintiff received notification from the EEOC that LSD had submitted its position statement in response to Plaintiff's Charge of Discrimination and downloaded it to her smartphone within a day or two thereafter.

78.    On a day during the week after Plaintiff downloaded the position statement onto her smartphone, Plaintiff revealed to her co-worker that she

had received the LSD position statement from the EEOC and was preparing a rebuttal.

79.    On or about December 3, 2025, the same co-worker informed Plaintiff that she had recently been summoned to the LSD Human Resources Director's office, and when she got there, she learned that the meeting was with the Public Safety investigator who had interviewed her on September 5, 2025.

80.    Plaintiff's co-worker told her the following:

- The two times that she had met with the investigator, he was focused on whether Plaintiff was the aggressor.

- "They are painting you as the problem."

- While the investigator initially asked her some questions about their former immediate supervisor, the questions during the recent meeting "were all about you."

- "If they weren't gunning for you, why would they ask about you?"

- "They are constantly trying to take you down."

- "They are gunning for you."

- She "got mad at" the investigator "because they are completely wrong for painting you as the bad guy, and I am sure they don't care if it is wrong."

- "I hope the District's handling of your complaint does not put a wedge between the two of us, but I want you to know that they are gunning for you."

81.    On December 17, 2025, LSD's Director of Human Resources notified Plaintiff by email that she was to appear for a Fact-Finding meeting the next day, i.e., December 18, 2025, to be conducted by the Public Safety Department investigator, based on a report by some of Plaintiff's co-workers that she shared specific details that were included in the position statement that LSD filed with the EEOC in response to her Charge of Discrimination, and questioned them about statements that they made during their interviews with the investigator.

82.    The Fact-Finding meeting was later postponed without date.

83.    On January 27, 2026, LSD's Director of Human Resources notified Plaintiff by email that he had rescheduled the Fact-Finding meeting to be conducted by the Public Safety Department investigator to January 29, 2026.

84.    Plaintiff objected to appearing for of the Fact-Finding meeting because: (1) how the investigator mischaracterized and selectively excluded much of the information that she provided in her previous interview with him, (2) he was not impartial, (3) the LSD had previously stated that the Public Safety investigator's investigation was completed, and (4) she wished to be represented by her lawyer during the interrogation.

85. LSD's Human Resources Director disputed the merit of Plaintiff's objections, denied her request to have her lawyer present to represent her during the interrogation, and notified Plaintiff that the Fact-Finding meeting would proceed, as scheduled.

86. Plaintiff appeared for the January 29, 2026, Fact-Finding meeting, started experiencing symptoms of a sever anxiety episode within minutes of entering the conference room, and had a difficult time hearing and comprehending the questions that four different interrogators asked her.

87. Plaintiff asked to be excused and the meeting to be postponed, but her request was refused.

88. On February 5, 2026, the same co-worker who previously told Plaintiff that LSD was "gunning for you," told Plaintiff that "HR is going to fire you" and that "everyone is now siding with HR."

89. Shortly after that conversation, also, on February 5, 2026, LSD placed Plaintiff on a paid, non-disciplinary leave of absence while it continued its investigation.

90. On March 25, 2026, Plaintiff appeared for a Pre-Disciplinary Meeting, this time with the LSD's Director of Human Resources and its

retained lawyer, and Plaintiff was permitted to be accompanied by her lawyer.

91.    During the Pre-Disciplinary Meeting, Plaintiff presented information that rebutted the truthfulness of allegations LSD contended (in a March 13, 2026 notice that was sent to Plaintiff) were reported to its management and Human Resources Department, to the effect that Plaintiff allegedly confronted certain employees about information that she learned about from the position statement that LSD filed with the EEOC, on more than one occasion, that the reporting employees allegedly claimed that they felt intimidated and uncomfortable in the workplace and stressed out, and that one employee allegedly reported that Plaintiff yelled at her the morning of February 5, 2026.

92.    At the end of the Pre-Disciplinary Meeting, the LSD's Human Resources Director stated that he would consider the rebuttal information that Plaintiff provided and adjourned the meeting without making a decision.

93.    Plaintiff remained on paid, non-disciplinary leave of absence after the March 25, 2026, Pre-Disciplinary Meeting.

94.    May 4, 2026, LSD notified Plaintiff that she was being laid off for budgetary reasons, and that her employment with LSD would terminate on June 30, 2026.

95.    LSD's May 4, 2026, letter notifying Plaintiff of her layoff stated that its Human Resources Department would in searching and applying for consideration for placement in any open positions with the LSD that she may be interested in and qualified for.

## COUNT I

## RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII

96.    Plaintiff incorporates by reference each of the preceding paragraphs of this Complaint as though more fully set forth herein.

97.    At all times relevant to this cause of action, Plaintiff was an "employee," and LSD an "employer," as those terms are defined by Title VII.

98.    At all times relevant to this cause of action, LSD was Plaintiff's employer, covered by and subject to the requirements of Title VII.

99.    Under Title VII, LSD was prohibited from discriminating against Plaintiff because of her religion or religious beliefs.

100.  LSD, through its management agents, violated Title VII's prohibition against religious-based discrimination by:

   a.    Subjecting Plaintiff to abusive treatment, including belittling, derogatory statements, frequent yelling and use

of profanity and disrespectful religious-based swearing and curse words;

b.   Treating Plaintiff differently than her similarly situated co-worker(s) with respect her daily production, the manner in which Plaintiff performed her work, the evaluation of Plaintiff's daily work product, and other basic conditions of employment because of Plaintiff's religion and her immediate supervisor's personal feelings about the views and beliefs of Plaintiff's religious denomination;

c.   Denying Plaintiff a step increase in salary because of her religion and her immediate supervisor's personal feelings about the views and beliefs of Plaintiff's religious denomination;

d.   Treating Plaintiff differently than her similarly situated co-worker(s) with respect to LSD's Nondiscrimination and Anti-Harassment complaint procedure because LSD's Human Resources personnel and management were indifferent, if not comfortable with the discriminatory treatment that Plaintiff's immediate supervisor was subjecting her to, notwithstanding the fact that the supervisor's conduct violated multiple LSD policies;

e.   Intentionally failing/refusing to protect Plaintiff from religious-based harassment by her immediate supervisor, because its Human Resources management's indifference, if not comfort with management's use of profanity, offensive religious-based swearing and curse words, and disrespect for Plaintiff's sincerely held Christian beliefs and sensibilities;

f.   Otherwise discriminating against Plaintiff on the basis of her religion and religious beliefs with respect to the terms, conditions, and/or privileges of employment; and/or

g.   Failing to provide Plaintiff with a work environment that was free from religious-based discrimination.

23

101. LSD's violations of Title VII as described above were intentional.

102. As a direct and proximate result of LSD's unlawful conduct in violating Title VII, as described above, Plaintiff has suffered damages, including but not limited to: (1) the loss of employment, (2) loss of past and future employment income, bonuses and employee benefits, (3) personal injuries including but not limited to mental anguish, emotional and psychological distress, anxiety, humiliation, embarrassment, derogation, fear and mortification, and physical ailments, (4) a sense of outrage and injury to her feelings, (5) injury to her professional reputation, and (6) other damages to be discovered through the course of litigation.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter a judgment in her favor, and against Defendant, Lansing School District, for (1) compensatory damages in an amount to be determined by the jury, (2) injunctive relief in the form of reinstatement to employment and reinstatement of fringe benefits and seniority rights, (3) exemplary and/or punitive damages, and (4) interest and the costs of litigation, including but not limited to reasonable attorney fees and witness fees.

## COUNT II

## RELIGIOUS-BASED HARASSMENT IN VIOLATION OF TITLE VII

103. Plaintiff incorporates each paragraph of this Complaint as though more fully set forth.

104. Under Title VII, LSD was required to provide Plaintiff with a work environment that was free from religious-based harassment.

105. Prior to Plaintiff commencing employment in December 2024, LSD was well-aware that Plaintiff's immediate supervisor frequently used offensive profanity that reflected her disrespect for Christian standards of conduct and decency, in addition to regularly yelling at, belittling, and abusing subordinate employees that she disliked.

106. Notwithstanding the LSD Board of Education's policies that prohibited the use of profanity, disrespectful language toward and abusive treatment of co-workers, religious-based discrimination and harassment, the LSD's Superintendent created an environment for employees where management employees used profanity, curse and swear words "all the time" and were comfortable with it; LSD's Human Resources Compliance Officers were indifferent to employee complaints about the use of profanity, curse and swear words that were disrespectful to God and Jesus Christ; and, LSD's Human Resources management leaders ignored reports and

complaints about supervisors creating of a hostile work environment for employees whose religious beliefs and sensibilities were offended by their supervisors' and/or co-workers' use of profanity, curse and swear words that were disrespectful to God, Jesus Christ, and their Christian beliefs and sensibilities.

107. Plaintiff was repeatedly subjected to unwelcomed offensive conduct by her immediate supervisor because of her religion and/or religious beliefs that was so severe and pervasive that it created an intimidating, abusive, and offensive atmosphere, and had the purpose and effect of unreasonably interfering with Plaintiff's ability to perform her job.

108. The conduct of Plaintiff's immediate supervisor as described above violated LSD's own policies concerning prohibited discrimination and harassment, and inappropriate conduct.

109. Plaintiff used LSD's internal discrimination and harassment complaint and reporting procedure on at least two occasions in May and July 2025, and reported her complaints to the appropriate Human Resources Department personnel, only to have the upper management in LSD's Human Resources Department ignore and fail/refuse to respond to her complaint, and fail/refuse to take any remedial or corrective action to

stop Plaintiff's immediate supervisor from continuing to engage in the conduct described above.

110. LSD is, therefore, vicariously liable for the religious-based harassment by Plaintiff's immediate supervisor and violation of Plaintiff's civil rights under Title VII.

111. Additionally, LSD ultimately failed to adequate disciplinary action against Plaintiff's immediate supervisor after conducting its investigation into Plaintiff's EEOC Charge of Discrimination, again, violating Plaintiff's civil rights under Title VII.

112. LSD's violations of Title VII as described above were intentional.

113. As a direct and proximate result of LSD's unlawful conduct in violating Title VII, as described above, Plaintiff has suffered damages, including but not limited to: (1) the loss of employment, (2) loss of past and future employment income, bonuses and employee benefits, (3) personal injuries including but not limited to mental anguish, emotional and psychological distress, anxiety, humiliation, embarrassment, derogation, fear and mortification, and physical ailments, (4) a sense of outrage and injury to her feelings, (5) injury to her professional reputation, and (6) other damages to be discovered through the course of litigation.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter a judgment in her favor, and against Defendant, Lansing School District, for (1) compensatory damages in an amount to be determined by the jury, (2) injunctive relief in the form of reinstatement to employment and reinstatement of fringe benefits and seniority rights, (3) exemplary and/or punitive damages, and (4) interest and the costs of litigation, including but not limited to reasonable attorney fees and witness fees.

## COUNT III

## RETALIATION IN VIOLATION OF TITLE VII

114. Plaintiff incorporates each paragraph of this Complaint as though more fully set forth.

115. Under Title VII, LSD was/is prohibited from retaliating against employees because the have reported a complaint about discrimination on the basis of religion or religious beliefs, or religious based harassment, or because they have filed a complaint with the EEOC about discrimination on the basis of religion or religious-based harassment.

116. LSD retaliated against Plaintiff in violation of Title VII by:

 (a)   Denying Plaintiff a step increase in salary for which she was due and qualified,

 (b)   Conducting an investigation into Plaintiff's discrimination and harassment complaint in a witch-hunt fashion that focused more on characterizing Plaintiff as a bad-actor with ulterior

28

motives as he attempted to manipulate witnesses who had previously corroborated Plaintiff's complaints, and manufacturing negative information about Plaintiff for the purpose of later initiating an investigation of Plaintiff to manufacture a basis for the LSD to pursue corrective and/or disciplinary action against Plaintiff;

(c)  Reassigning Plaintiff's former-immediate supervisor to a position that was located in the same building that Plaintiff worked in, in close proximity to Plaintiff's work area, and which provided Plaintiff's former immediate supervisor close proximity to Plaintiff's co-workers with whom she proceeded to stay in constant daily communication about Plaintiff;

(d)  Refusing Plaintiff's request to have her former immediate supervisor reassigned to a position in a different building from the one that Plaintiff worked in;

(e)  Commencing and conducting an investigation against Plaintiff with the objective of establishing a pretextual basis for terminating her employment; and,

(f)  Other acts to be discovered through the course of litigation.

117.  LSD's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

118.  As a direct and proximate result of LSD's unlawful conduct in violating Title VII, as described above, Plaintiff has suffered damages, including but not limited to: (1) the loss of employment, (2) loss of past and future employment income, bonuses and employee benefits, (3) personal injuries including but not limited to mental anguish, emotional and psychological distress, anxiety, humiliation, embarrassment, derogation,

29

fear and mortification, and physical ailments, (4) a sense of outrage and injury to her feelings, (5) injury to her professional reputation, and (6) other damages to be discovered through the course of litigation.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter a judgment in her favor, and against Defendant, Lansing School District, for (1) compensatory damages in an amount to be determined by the jury, (2) injunctive relief in the form of reinstatement to employment and reinstatement of fringe benefits and seniority rights, (3) exemplary and/or punitive damages, and (4) interest and the costs of litigation, including but not limited to reasonable attorney fees and witness fees.

## COUNT IV

## SEX DISCRIMINATION IN VIOLATION OF THE ELCRA

119.  Plaintiff incorporates each paragraph of this Complaint as though more fully set forth.

120.  Plaintiff is a "person" as that term is defined in MCL § 37.2103.

121.  LSD is an "employer" as that term is defined in MCL § 37.2201.

122.  Similar to Title VII, LSD was prohibited under the ELCRA from discriminating against Plaintiff because of her religion or religious beliefs.

123.  As described above, through its management agents, violated ELCRA's prohibition against religious-based discrimination by:

a.  Subjecting Plaintiff to abusive treatment, including belittling, derogatory statements, frequent yelling and use of profanity and disrespectful religious-based swearing and curse words;

b.  Treating Plaintiff differently than her similarly situated co-worker(s) with respect her daily production, the manner in which Plaintiff performed her work, the evaluation of Plaintiff's daily work product, and other basic conditions of employment because of Plaintiff's religion and her immediate supervisor's personal feelings about the views and beliefs of Plaintiff's religious denomination;

c.  Denying Plaintiff a step increase in salary because of her religion and her immediate supervisor's personal feelings about the views and beliefs of Plaintiff's religious denomination;

d.  Treating Plaintiff differently than her similarly situated co-worker(s) with respect to LSD's Nondiscrimination and Anti-Harassment complaint procedure because LSD's Human Resources personnel and management were indifferent, if not comfortable with the discriminatory treatment that Plaintiff's immediate supervisor was subjecting her to, notwithstanding the fact that the supervisor's conduct violated multiple LSD policies;

e.  Intentionally failing/refusing to protect Plaintiff from religious-based harassment by her immediate supervisor, because its Human Resources management's indifference, if not comfort with management's use of profanity, offensive religious-based swearing and curse words, and disrespect for Plaintiff's sincerely held Christian beliefs and sensibilities;

f.  Otherwise discriminating against Plaintiff on the basis of her religion and religious beliefs with respect to the terms, conditions, and/or privileges of employment;

g.  Failing to provide Plaintiff with a work environment that was free from religious-based discrimination; and/or

31

h.      Terminating Plaintiff's employment because of her religion and/or religious beliefs, and/or because Plaintiff objected to being subjected to being subjected to her immediate supervisor's use of profanity, offensive religious-based swearing and curse words, and disrespect for Plaintiff's sincerely held Christian beliefs and sensibilities.

124. As a direct and proximate result of LSD's violation of the ELCRA, Thomas has suffered damages, including but not limited to: (1) the loss of employment, (2) loss of past and future employment income, bonuses and employee benefits, (3) personal injuries including but not limited to mental anguish, emotional and psychological distress, anxiety, humiliation, embarrassment, derogation, fear and mortification, and physical ailments, (4) a sense of outrage and injury to her feelings, (5) injury to her professional reputation, and (6) other damages to be discovered through the course of litigation.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter a judgment in her favor, and against Defendant, Lansing School District, for (1) compensatory damages in an amount to be determined by the jury, (2) injunctive relief in the form of reinstatement to employment and reinstatement of fringe benefits and seniority rights, (3) exemplary damages, and (4) interest and the costs of litigation, including but not limited to reasonable attorney fees and witness fees.

## COUNT V

## HARASSMENT IN VIOLATION OF THE ELCRA

125. Plaintiff incorporates each paragraph of this Complaint as though more fully set forth.

126. Under the ELCRA, LSD was required to provide Plaintiff with a work environment that was free from religious-based harassment.

127. As alleged above, Plaintiff was repeatedly subjected to unwelcomed offensive conduct by her immediate supervisor because of her religion and/or religious beliefs that was so severe and pervasive that it created an intimidating, abusive, and offensive atmosphere, and had the purpose and effect of unreasonably interfering with Plaintiff's ability to perform her job.

128. The conduct of Plaintiff's immediate supervisor as described above violated LSD's own policies concerning prohibited discrimination and harassment, and inappropriate conduct.

129. Plaintiff used LSD's internal discrimination and harassment complaint and reporting procedure only to have the upper management in LSD's Human Resources Department ignore and fail/refuse to respond to her complaint, and fail/refuse to take any remedial or corrective action to

stop Plaintiff's immediate supervisor from continuing to engage in the conduct described above.

130. LSD is, therefore, vicariously liable for the religious-based harassment by Plaintiff's immediate supervisor and violation of Plaintiff's civil rights under the ELCRA.

131. Additionally, LSD ultimately failed to adequate disciplinary action against Plaintiff's immediate supervisor after conducting its investigation into Plaintiff's EEOC Charge of Discrimination, again, violating Plaintiff's civil rights under the ELCRA.

132. LSD's violations of the ELCRA as described above were intentional.

133. As a direct and proximate result of LSD's unlawful conduct in violating the ELCRA, as described above, Plaintiff has suffered damages, including but not limited to: (1) the loss of employment, (2) loss of past and future employment income, bonuses and employee benefits, (3) personal injuries including but not limited to mental anguish, emotional and psychological distress, anxiety, humiliation, embarrassment, derogation, fear and mortification, and physical ailments, (4) a sense of outrage and injury to her feelings, (5) injury to her professional reputation, and (6) other damages to be discovered through the course of litigation.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter a judgment in her favor, and against Defendant, Lansing School District, for (1) compensatory damages in an amount to be determined by the jury, (2) injunctive relief in the form of reinstatement to employment and reinstatement of fringe benefits and seniority rights, (3) exemplary and/or punitive damages, and (4) interest and the costs of litigation, including but not limited to reasonable attorney fees and witness fees.

## COUNT VI

## RETALIATION IN VIOLATION OF THE ELCRA

134. Plaintiff incorporates each paragraph of this Complaint as though more fully set forth.

135. Under the ELCRA, LSD was/is prohibited from retaliating against employees because the have reported a complaint about discrimination on the basis of religion or religious beliefs, or religious based harassment, or because they have filed a complaint with the EEOC about discrimination on the basis of religion or religious-based harassment.

136. LSD retaliated against Plaintiff in violation of the ELCRA by:

(a)  Denying Plaintiff a step increase in salary for which she was due and qualified,

(b)  Conducting an investigation into Plaintiff's discrimination and harassment complaint in a witch-hunt fashion that focused more on characterizing Plaintiff as a bad-actor with ulterior

35

motives as he attempted to manipulate witnesses who had previously corroborated Plaintiff's complaints, and manufacturing negative information about Plaintiff for the purpose of later initiating an investigation of Plaintiff to manufacture a basis for the LSD to pursue corrective and/or disciplinary action against Plaintiff;

(c) Reassigning Plaintiff's former-immediate supervisor to a position that was located in the same building that Plaintiff worked in, in close proximity to Plaintiff's work area, and which provided Plaintiff's former immediate supervisor close proximity to Plaintiff's co-workers with whom she proceeded to stay in constant daily communication about Plaintiff;

(d) Refusing Plaintiff's request to have her former immediate supervisor reassigned to a position in a different building from the one that Plaintiff worked in;

(e) Commencing and conducting an investigation against Plaintiff with the objective of establishing a pretextual basis for terminating her employment;

(f) Terminating Plaintiff's employment; and,

(g) Other acts to be discovered through the course of litigation.

137. LSD's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

138. As a direct and proximate result of LSD's unlawful conduct in violating the ELCRA, as described above, Plaintiff has suffered damages, including but not limited to: (1) the loss of employment, (2) loss of past and future employment income, bonuses and employee benefits, (3) personal injuries including but not limited to mental anguish, emotional and

psychological distress, anxiety, humiliation, embarrassment, derogation, fear and mortification, and physical ailments, (4) a sense of outrage and injury to her feelings, (5) injury to her professional reputation, and (6) other damages to be discovered through the course of litigation.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter a judgment in her favor, and against Defendant, Lansing School District, for (1) compensatory damages in an amount to be determined by the jury, (2) injunctive relief in the form of reinstatement to employment and reinstatement of fringe benefits and seniority rights, (3) exemplary and/or punitive damages, and (4) interest and the costs of litigation, including but not limited to reasonable attorney fees and witness fees.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff, NATALIA THOMAS, by and through her attorneys, MORGAN & JONES, PLLC., hereby demands for trial by jury of all of her claims.

Respectfully submitted,

MORGAN & JONES, PLLC.

By:    */s/Sam Morgan*
Sam Morgan (P36694)
Attorneys for Plaintiff
30500 Northwestern Highway, Suite 425
Farmington Hills, MI  48334
(248) 865-0001
smorgan@work-lawyers.com

Dated: May 20, 2026

# Exhibit A

EEOC No. 471-2025-07110 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 471-2025-07110 |
| Michigan Department Of Civil Rights | |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Miss NATALIA THOMAS

Phone No.:     (517) 730-8623
Year of Birth:    1989
Mailing Address: 4727 Gull
Lansing, MI 48917

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: LANSING SCHOOL DISTRICT
No. Employees, Members: 101 - 200 Employees
Phone No.: (517) 755-1000
Mailing Address: 5815 Wise Rd
Lansing, MI 48917, UNITED STATES OF AMERICA
Name:
No. Employees, Members:
Phone No.:
Mailing Address:

DISCRIMINATION BASED ON:

Religion, Retaliation

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 02/19/2025
Latest: 08/06/2025

THE PARTICULARS ARE:

I began working for the above-named employer on or about December 9, 2024, as a Print Shop Specialist.

On February 19, 2025, my supervisor made a negative comment towards me, such as, this is fucking stupid. On or about May 1, 2025, my supervisor, made a hate speech on not going to church and didn't care for Jesus Christ. On May 2, 2025, I submitted a reasonable accommodation and complaint with the human resource compliance officer. On July 29, 2025, I had a meeting with the director of human resources. Nothing was resolved from the meeting. On August 6, 2025, it became a hostile working environment. I filed a complaint for continuous concerns regarding the offensive and negative religious comments made to humiliate me to the human resource representative. However, the process appeared to be flawed and bias, as my concerns were not adequately addressed. I did not want to continue subjecting myself to retaliation for negative comments towards my religious beliefs.

I believe I was subjected to discrimination for retaliation, due to my religion, for participating in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

_Natalie A R_    8.22.25

Charging Party Signature & Date

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

_____

Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary_____

Printed Name _____

## CP ENCLOSURE WITH EEOC FORM 5 (06/24)

### PRIVACY ACT STATEMENT

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. FORM NUMBER/TITLE/DATE. EEOC Form 5, Charge of Discrimination (09/24).

2. AUTHORITY. 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. PRINCIPAL PURPOSES. The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. ROUTINE USES. This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION. Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# Exhibit B

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Detroit Field Office**
477 Michigan Avenue, Room 865
Detroit, MI 48226
(313) 774-0020
Website:  www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 02/19/2026

**To:** Miss NATALIA THOMAS
4727 Gull
Lansing, MI 48917
Charge No: 471-2025-07110

EEOC Representative and email:   MARCUS SANDERS
INVESTIGATOR
MARCUS.SANDERS@EEOC.GOV

---

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 471-2025-07110.

On behalf of the Commission,

Digitally Signed By: Ramiro Gutierrez
02/19/2026

Ramiro Gutierrez
Director

**Cc:**
NA NA
5815 Wise Rd
Lansing, MI 48917

Clayton Ross
Lansing School District
519 W. Kalamazoo St.
Lansing, MI 48933

Kara T Rozin
Clark Hill PLC
200 Ottawa Avenue NW, Suite 500
Grand Rapids, MI 49503

Sam Morgan
Morgan & Jones, PLLC
30500 Northwestern Highway Suite 425
FARMINGTON, MI 48334


Please retain this Notice for your records.

Enclosure with EEOC Notice of Closure and Rights (05/25)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a

Enclosure with EEOC Notice of Closure and Rights (05/25)

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 471-2025-07110 to the District Director at Richard Burgamy, 115 W. Washington St. South Tower Suite 600, Indianapolis, IN 46204.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 471-2025-07110 to the District Director at Richard Burgamy, 115 W. Washington St. South Tower Suite 600, Indianapolis, IN 46204.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.